# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

PHYLLIS LOUISE W.,[1]

                    Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,

                Defendant.      Case No. 3:25-cv-00065-ACP

## **DECISION AND ORDER**

On or about January 13, 2016, self-represented Phyllis Louise W. ("Plaintiff")

protectively filed an application under Title II of the Social Security Act,[2] with an

alleged onset date beginning June 3, 2002.[3]  Plaintiff timely appealed to this Court

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brings claims under Title II only. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 249, 251.  The ALJ's decision cites December 17, 2015 as the application date, but the record includes an Application Summary and Amendments to Application dated January 13, 2016.  A.R. 661.  Plaintiff's amendment to her application changed the alleged onset date from March 1, 2002

on April 1, 2025.[4]  Liberally construed, Plaintiff's Opening Brief asks the Court to reverse the Commissioner's decision and remand for the payment of benefits.[5] The Commissioner filed the Administrative Record as his Answer and a Response Brief.[6]  No reply brief was filed.  Oral argument was not requested by either party and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[7]  For the reasons discussed below, Plaintiff's request for relief at Docket 20 is DENIED and the Commissioner's final decision is AFFIRMED.

## STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[8]  "Substantial evidence" has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]  Such evidence must be "more than a mere scintilla but not

---

to June 3, 2002.  A.R. 249.

[4] Docket 1.

[5] Docket 20 (Plaintiff's Brief) at 4 ("[T]he claimant has significant anxiety about the hearing decision.  If appropriate, I ask you to grant this claim on the record.").

[6] Docket 15 (Notice of Lodging Admin. Record); Docket 21 (Commissioner's Br.). As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record[.]"  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[7] 42 U.S.C. § 405(g).

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of*

necessarily a preponderance."[10]  In reviewing the agency's determination, a court "considers the evidence in its entirety, weighing both the evidence that supports and that detracts from the ALJ's conclusion."[11]  "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."[12]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[13]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[14]  The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel."[15]

---

*New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Connett v. Barnhart,* 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).

[11] *Luther v. Berryhill,* 891 F.3d 872, 875 (9th Cir. 2018).

[12] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation and internal quotation omitted).

[13] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[14] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[15] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

## DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[16] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[17] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[18]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[19]

---

[16] 42 U.S.C. § 423(a).

[17] 42 U.S.C. § 1381.

[18] 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

[19] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 4 of 26
Case 3:25-cv-00065-ACP     Document 24     Filed 05/18/26     Page 4 of 26

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[20]  A claimant bears the burden of proof at steps one through four to make a prima facie showing of disability.[21]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[22]  The Commissioner can meet this burden in two ways: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2.[23]  The steps, and the ALJ's findings in this case (in italics), are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity."[24]  *The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2011.[25]  The ALJ also determined that Plaintiff engaged in substantial gainful activity from June 2006 to January 2007, but she did not engage in substantial gainful activity after January 2007.[26]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a

---

[20] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[21] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[22] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[23] *Tackett*, 180 F.3d at 1101.

[24] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[25] A.R. 663.

[26] A.R. 664.

claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[27] *The ALJ determined that Plaintiff's right knee osteoarthritis was a severe impairment.[28] The ALJ considered Plaintiff's chronic pain syndrome and meniscus damage in conjunction with Plaintiff's right knee osteoarthritis.[29]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[30] *The ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[31]*

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[32] Once determined, the RFC is

---

[27] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[28] A.R. 664.

[29] A.R. 664.

[30] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[31] A.R. 664.

[32] 20 C.F.R. §§ 404.1545(a), 416.945(a).

used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[33]  *The ALJ determined that, through the date last insured, Plaintiff had the RFC to perform light work with the following limitations:  sitting for six hours in an eight-hour workday; standing up to one hour at one time for a total of two hours in an eight-hour workday with normal breaks; walking up to 15 minutes at one time for a total of one hour in an eight-hour workday with normal breaks; occasionally performing right foot control operations; pushing and pulling with her upper extremities without limit; occasionally climbing ramps or stairs, balancing with a handheld assistive device, stooping, kneeling, crouching and crawling; never climbing ladders, ropes, or scaffolds; avoiding all unprotected heights; and avoiding concentrated exposure to hazardous machinery and operational control of moving machinery.*[34]

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[35]  Otherwise, the evaluation process moves to the fifth

---

[33] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[34] A.R. 665.
[35] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 7 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 7 of 26

and final step.[36]  *The ALJ determined that Plaintiff was unable to perform any past relevant work.*[37]

Step 5.  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[38]  *Based on the vocational expert ("VE")'s testimony and through the date last insured, the ALJ determined that there were light work jobs existing in significant numbers in the national economy that Plaintiff could perform, including router (DOT # 222.587-038, light work with SVP of 2); routing clerk (DOT # 222.687-022, light work with a SVP of 2); and marker (DOT # 209.587-034, light work with a SVP of 2).*[39]  *The ALJ also determined that there were also sedentary jobs existing in significant numbers in the national economy that Plaintiff could perform, including cutter/paster (DOT # 249.587-014) and surveillance system monitor (DOT # 379.367-010).*[40]

The ALJ concluded that Plaintiff was not disabled on or before the date last insured of March 31, 2011.[41]

---

[36] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[37] A.R. 671.
[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[39] A.R. 672.
[40] A.R. 673.
[41] A.R. 673.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 8 of 26

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 46 years old and considered a "younger individual" as of the date last insured.[42]  Plaintiff alleges that she was injured on June 3 or 6, 2002, when a heavy box fell onto her right knee while working for the U.S. Army Signal Command at Fort Richardson, Alaska.[43]  Plaintiff previously applied for disability in 2003, which the SSA denied on June 5, 2006 and Plaintiff did not appeal.[44] Plaintiff went back to work as an office clerk at Hope Community Resources from approximately December 2005 to January 2007, working at a substantial gainful level from June 2006 to January 2007.[45]

After reviewing Plaintiff's application, the SSA determined that Plaintiff did not qualify for Title II benefits.[46]  Plaintiff exhausted the administrative process and appealed to this Court.[47]  The Court vacated the Commissioner's final decision and remanded the case to the SSA for further proceedings on September 3, 2019.[48] Accordingly, the Appeals Council ordered the ALJ to reconsider the medical

---

[42] A.R. 671; *see* 20 C.F.R. § 404.1563(c).

[43] A.R. 634.

[44] A.R. 661.

[45] A.R. 301, 664.

[46] A.R. 118, 121–25.  A claimant must be insured in order to establish eligibility for Title II benefits.  42 U.S.C. §§ 416(i)(3), 423(a), (c).

[47] Docket 1 at 1, *Williams v. Saul,* No. 3:18-cv-00131-SLG, 2019 WL 13235793, at *1 (D. Alaska Sept. 3, 2019).

[48] A.R. 769–803.

opinion evidence from Drs. R. Matison White, M.D., T. Noah Laufer, M.D., and David McGuire, M.D.[49]

On November 18, 2020, the ALJ held a hearing on remand.[50] Plaintiff testified telephonically with representation at the hearing.[51] On January 22, 2021, the ALJ issued an unfavorable decision.[52] The record also shows that Plaintiff's former attorney filed written exceptions to the ALJ decision on June 29, 2021.[53] Almost four years later, the Appeals Council initially denied the written exceptions as untimely on March 21, 2025.[54]

Plaintiff filed her complaint with the Court on April 1, 2025.[55] On April 22, 2025, the Court ordered Plaintiff to submit evidence of a final decision by the Appeals Council by June 23, 2025.[56] On the same day, the Appeals Council granted Plaintiff's request for additional time to file her written exceptions.[57] On June 2, 2025, the Appeals Council considered Plaintiff's written exceptions to the ALJ's decision, found no basis for changing the ALJ's decision, and declined to

---

[49] A.R. 806.
[50] A.R. 684–733.
[51] A.R. 705–26.
[52] A.R. 661–673.
[53] A.R. 634–37.
[54] A.R. 629.
[55] Docket 1.
[56] Docket 5.
[57] A.R. 626.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 10 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 10 of 26

assume jurisdiction.[58]  Plaintiff submitted the Appeals Council's order on June 25, 2025, at Docket 6-1.

Although Plaintiff filed her complaint before the Appeals Council denied review of her claim, she took the last step in the administrative review process by requesting review by the Appeals Council.[59]  Moreover, the Commissioner has not alleged that Plaintiff failed to exhaust her administrative remedies and filed an Answer at Docket 15.[60]  Consequently, to the extent that Plaintiff failed to exhaust her administrative remedies by filing her complaint before the Appeals Council issued its decision, such failure is waived.[61]

### A. The Medical Record

Because this case has returned to the Court on remand and neither party disputes the Court's previous account of the relevant portion of the record,[62] the Court limits its summary of the record to the following relevant medical records and opinions:

---

[58] A.R. 619–20.

[59] *See Sims v. Apfel,* 530 U.S. 103, 107 (2000) ("The Commissioner rightly concedes that petitioner exhausted administrative remedies by requesting review by the Council.  Petitioner thus obtained a final decision, and nothing in § 405(g) or the regulations implementing it bars judicial review of her claims.").

[60] Docket 21.

[61] *See Johnson v. Shalala,* 2 F.3d 918, 921 (9th Cir. 1993) (citing *Mathews v. Eldridge,* 424 U.S. 319, 330 (1976)) ("The exhaustion requirement . . . is not jurisdictional, and thus, is waivable by either the Secretary or the courts.").

[62] A.R. 665, 976.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 11 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 11 of 26

On January 27, 2004, David McGuire, M.D., at Alaska Orthopedic Specialists, Inc., wrote a letter to an attorney regarding Plaintiff's condition at the time. He noted that Plaintiff had right knee surgery on November 12, 2002.[63] Dr. McGuire opined that Plaintiff had "permanent damage to her knee and it would be best if she retire."[64] He also opined that "her job duties have worsened her symptoms and are the cause of her current condition based on her medical record."[65]

On January 3, 2006, Matison White, M.D., at Medical Park Family Care, evaluated Plaintiff. Dr. White opined that Plaintiff's right knee showed "advanced signs of degenerative osteoarthritis and most likely is best treated by a total knee replacement."[66] Dr. White also opined that "she should be retired from her work, as there is the great potential for further degenerative damage and, therefore, loss of quality of life and basic life functioning."[67] Dr. White also noted, "Plaintiff is so very young, a total knee replacement needs to be avoided as long as possible in order for her to have a normal, useful knee during her expected normal life expectancy."[68]

---

[63] A.R. 469.

[64] A.R. *Id.*

[65] A.R. *Id.*

[66] A.R. 472.

[67] *Id.*

[68] *Id.*

On April 4, 2011, Plaintiff had x-rays of her knees. The x-rays showed "[s]evere right knee tricompartmental osteoarthr[it]is, likely posttraumatic" and "[n]o radiographic evidence for acute fracture, malalignment or dislocation."[69]

On April 6, 2011, Dr. McGuire referred Plaintiff to Tim Kavanaugh, M.D., to "evaluate for TKR."[70] On April 14, 2011, Dr. McGuire wrote a letter on Plaintiff's behalf. He noted that Plaintiff had been seen for an "ongoing period of time" for right knee pain and that over the years, Plaintiff's right knee condition had worsened.[71] He stated that she had been diagnosed with severe tricompartmental degenerative joint disease of the right knee and had been referred to Dr. Kavanaugh for a right total knee replacement.[72] He noted that "[i]t has been recommended that she only performs sedentary work" and that her knee condition would continue to worsen and not improve over time.[73]

On July 18, 2017, Dr. White wrote a letter on Plaintiff's behalf. Dr. White assessed Plaintiff with severe degenerative osteoarthritis of her right knee.[74] Dr. White noted that the knee had "further deteriorated" and that Plaintiff was "most likely going to require total knee replacement."[75] Dr. White opined that Plaintiff

---

[69] A.R. 542.
[70] A.R. 419.
[71] A.R. 531.
[72] *Id*.
[73] *Id*.
[74] A.R. 14.
[75] *Id*.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 13 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 13 of 26

was "not currently able to function normally or hold a job because of her chronic knee pain and disability."[76]

## B. Medical Expert Hearing Testimony

On November 18, 2020, medical expert Jack LeBeau, M.D., testified that Plaintiff had "very significant osteoarthropathy of the left knee" and agreed with the "unified opinion" of Plaintiff's surgeons that she required knee replacement of the right knee.[77] He opined that a knee replacement lasts about 15 years and that Plaintiff may have been "a bit young" at the time of her injury for replacement.[78] Dr. LeBeau opined that Plaintiff did not meet or medically equal the requirements for listing 1.02 in Appendix 1 of 20 C.F.R. Part 404, Subpart P.[79] Dr. LeBeau noted that he did not see evidence that Plaintiff needed to use a cane regularly and she appeared to be "moving around."[80]

Dr. LeBeau testified that Plaintiff had the following limitations as of the date last insured: Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for an unlimited period of six to eight hours with regular breaks; stand for one hour at a time up to two hours in a workday; walk for 15 minutes at a time up to one hour in a workday; occasionally climb stairs and ramps, balance, kneel,

---

[76] *Id.*

[77] A.R. 693–94.

[78] A.R. 694.

[79] A.R. 696.

[80] *Id.*

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 14 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 14 of 26

crouch and crawl; needed to avoid unprotected heights; and could frequently tolerate machinery.[81]  He also opined that, even if Plaintiff had hip pain in 2011, the limitations would stay the same.[82]

## DISCUSSION

Liberally construed, Plaintiff alleges that the SSA decision should be reversed and remanded for the following reasons: (1) her date last insured is July 31, 2025; (2) the ALJ failed to afford great weight to her treating physicians Dr. White's and Dr. McGuire's medical opinions; (3) if she is limited to only sedentary work, she would be found disabled under the Medical-Vocational Guidelines ("Grids"); and (4) the ALJ failed to include Plaintiff's mental limitations in the RFC.[83] The Commissioner disagrees, and urges the Court to affirm the SSA decision.[84]

### I.    Date Last Insured

Plaintiff alleges that her date last insured is July 31, 2025.[85]  The Commissioner asserts that the ALJ's determination of a date last insured of March 31, 2011 is supported by agency records, including earnings records showing that Plaintiff has not reported earnings since 2007.[86]

---

[81] A.R. 696–99.

[82] A.R. 704.

[83] Docket 20 at 2–4.

[84] Docket 21 at 1–3.

[85] Docket 20 at 2.

[86] Docket 21 at 2, *citing* A.R. 105, 110, 114, 295, 894, 897.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 15 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 15 of 26

Under Title II of the Social Security Act, a person is disabled if the individual cannot work or engage in substantial gainful activity for a period of 12 continuous months because of a medically determinable impairment.[87]  Plaintiff bears the burden of establishing the existence of a severe impairment, and ultimately disability, prior to the last date insured.[88]  And, "[i]n order to obtain disability benefits, [a claimant] must demonstrate that [s]he was disabled prior to [her] last insured date."[89]

The Commissioner calculates the date last insured using the claimant's earned wages to determine the number of "quarters of coverage" a claimant has accumulated.[90]  To have disability insured status during any quarter, the claimant must be fully insured in that quarter and have at least 20 quarters of coverage in the last 40-quarter period ending with that quarter.[91]

Here, the ALJ's date last insured determination is supported by Plaintiff's earnings' records.[92]  Moreover, Plaintiff does not allege that she has engaged in substantial gainful activity since 2007; nor does she otherwise demonstrate that her date last insured should be changed to July 31, 2025.[93]  In sum, the ALJ's date

---

[87] *See* 42 U.S.C. §§ 423(d)(1), (2).

[88] *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir.1998); *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995).

[89] *Armstrong v. Comm'r of Soc. Sec. Admin*., 160 F.3d 587, 589 (9th Cir. 1998).

[90] 20 C.F.R. § 404.130.

[91] 20 C.F.R. § 404.130(b).

[92] A.R. 885–92, 894–97, 899–903.

[93] Docket 20.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 16 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 16 of 26

last insured determination is supported by substantial evidence.

## II. Medical Opinions

Because Plaintiff filed her application before March 27, 2017, the relevant regulations in effect at the time will be applied to the Court's analysis.[94] Under the regulations prior to March 27, 2017, the ALJ evaluates medical opinions based on the source of the opinion: physicians who treat the claimant; physicians who examine but do not treat the claimant; and physicians who neither examine nor treat the claimant.[95] "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."[96] In the Ninth Circuit, when "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[97] This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[98]

---

[94] 20 C.F.R. §§ 404.1527(c), 416.927(c). These sections apply to claims filed before March 27, 2017; *but see Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[95] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[96] *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

[97] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[98] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 17 of 26
Case 3:25-cv-00065-ACP     Document 24     Filed 05/18/26     Page 17 of 26

Liberally construed, Plaintiff alleges that the ALJ erred by failing to give great weight to the medical opinions of her treating doctors, Drs. White and McGuire.[99] She does not appear to dispute the ALJ's findings regarding the medical opinions of her other treating physicians, including Dr. Laufer.[100]

The ALJ evaluated and discussed Dr. McGuire's 2004 and 2011 opinion letters as well as Dr. White's 2006 and 2017 opinion letters.[101] Because Dr. McGuire and Dr. White were treating physicians and their medical opinions were contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting these opinions.

### A. Dr. McGuire's 2004 and Dr. White's 2006 Opinions

The ALJ discounted Dr. McGuire's 2004 letter and Dr. White's 2006 letter because they predated Plaintiff's substantial gainful activity from June 2006 to January 2007.[102] In the Ninth Circuit, "[m]edical opinions that predate the alleged onset of disability are of limited relevance."[103] Here, Plaintiff filed a previous application for benefits, which was denied after a hearing on June 5, 2006, and Plaintiff did not appeal the ALJ's decision.[104] Consequently, the medical opinions

---

[99] Docket 20 at 2–3.

[100] Docket 20.

[101] A.R. 670–71.

[102] A.R. 670–71.

[103] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

[104] A.R. 739.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 18 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 18 of 26

rendered in connection with Plaintiff's previous application are of limited relevance.

Moreover, participating in substantial gainful activity is a reason for rejecting a medical opinion that the claimant is disabled.[105]   Here, Plaintiff worked as an office clerk after June 2006 to January 2007, with job duties involving eight-hour workdays with standing, walking, stooping, kneeling, crouching, and crawling, as well as lifting up to 100 pounds or more.[106]   Accordingly, Drs. McGuire's and White's medical opinions predating Plaintiff's substantial gainful activity are of limited relevance for this reason as well.

The ALJ also concluded that Dr. McGuire's recommendation that Plaintiff retire was reasonable in the context of the heavy level job at the Army, but viewing Dr. McGuire's statement "as one stating that [Plaintiff] could not work at all would be a highly and grossly inaccurate interpretation."[107]   Consequently, the ALJ reasoned that Dr. McGuire's 2004 letter did not contradict the RFC.[108]   The ALJ also agreed with Dr. White's support of Dr. McGuire's recommendation to retire from her heavy level job with the Army and found that Dr. White's 2006 opinion did not contradict the RFC.[109]   Taken in context, Dr. McGuire's and Dr. White's opinion

---

[105] *Katz v. Sec'y of Health & Hum. Servs.*, 972 F.2d 290, 293 (9th Cir. 1992) (citing 42 U.S.C. § 423) ("A person is disabled only if [her] impairments make [her] unable to engage in 'substantial gainful work.'").
[106] A.R. 339, 669.
[107] A.R. 670.
[108] *Id*.
[109] A.R. 671.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 19 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 19 of 26

that Plaintiff needed to retire from her 2004 heavy level job is reflected in the RFC.

To the extent the opinions of Dr. McGuire and Dr. White from 2004 and 2006 conflicted with the ALJ's RFC and step five findings, the ALJ's reasons for discounting these opinions are specific, legitimate, and supported by substantial evidence.

### B. Dr. McGuire's April 2011 and Dr. White's July 2017 Opinions

The ALJ found that Dr. McGuire's April 2011 opinion that Plaintiff could only perform sedentary work did not contradict the ALJ's finding at step five, even if Plaintiff was limited to sedentary work.[110]  Accordingly, the opinion supports the ALJ's finding of no disability on or before March 31, 2011.  This reason is supported by substantial evidence.

The ALJ discounted Dr. White's July 2017 opinion that Plaintiff was unable to function normally or hold a job due to knee pain.  The ALJ reasoned that the 2017 opinion referenced Plaintiff's functioning at the time of the letter, not her functional capacity on or before March 2011.[111]  Specifically, the ALJ noted that Dr. White opined that Plaintiff's right knee impairment has worsened since 2014.[112]  Because Dr. White's July 2017 letter addressed Plaintiff's limitations after her date last insured, its relevance to the disability period at issue is limited.  The ALJ's

---

[110] *Id*.

[111] *Id*.

[112] A.R. 14, 671.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 20 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 20 of 26

reason is specific, legitimate, and supported by substantial evidence.

The ALJ also discounted Dr. McGuire's and Dr. White's medical opinions because they did not provide a functional assessment of Plaintiff's limitations caused by her physical impairments.[113]  In the Ninth Circuit, an ALJ may discount a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."[114]  However, whether an ALJ may reject a medical opinion because it lacks a function-by-function assessment is not a settled question in this circuit.  District courts have recently held that a physician's failure to provide a function-by-function analysis is not a valid reason for discounting that opinion.[115]  And, in other district court cases, the Commissioner has declined to defend this position on appeal.[116]  The Commissioner does not appear to address this reason his brief.[117]

---

[113] A.R. 669–70.

[114] *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (suggesting that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" and does not include "any named limitations such as the inability to lift, stoop, walk, stand or sit").

[115] *Campuzano v. Comm'r of Soc. Sec.,* No. 20-CV-721-WQH(WVG), 2021 WL 3093571, at *10 (S.D. Cal. July 22, 2021) (collecting cases).

[116] *Elizabeth F. v. Comm'r SSA*, No. 19CV202-YY, 2020 WL 5870205, at *6 (D. Or. Aug. 10, 2020) ("The Commissioner does not defend the validity of the ALJ's function-by-function rationale."); *Mary M. v. Comm'r of Soc. Sec.*, No. 19CV327-JR, 2020 WL 2556353, at *3 n.3 (D. Or. May 20, 2020) ("The Commissioner concedes that the lack of a function-by-function assessment is not a valid reason to discount the opinion.").

[117] Docket 21.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 21 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 21 of 26

To the extent the ALJ rejects Drs. McGuire's and White's medical opinions solely because they lack a function-by-function assessment, the Court finds that the ALJ erred. However, for the reasons set forth above, the ALJ provides other specific and legitimate reasons supported by substantial evidence for rejecting Dr. McGuire's and Dr. White's opinions. Therefore, any error by the ALJ for improperly rejecting the medical opinions for failing to provide a function-by-function analysis is harmless.[118]

In sum, the ALJ's evaluation of the medical opinions and medical expert testimony is supported by substantial evidence and the ALJ provided specific and legitimate reasons for discounting the medical opinions of Dr. McGuire and Dr. White.

### III.    Medical-Vocational Guidelines ("Grids")

Plaintiff alleges that, based on Drs. McGuire's and White's opinions that she was limited sedentary or less-than-sedentary work, and considering her age of 61 as of the date of her complaint, the Grids direct a finding of disabled.[119] The Commissioner contends that Plaintiff cannot be considered disabled under the Grids because she was considered a "younger individual" on the date last insured and she is not illiterate.[120]

---

[118] *Brown-Hunter,* 806 F.3d at 492 (9th Cir. 2015).
[119] Docket 20 at 3.
[120] Docket 21 at 2–3.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 22 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 22 of 26

The Grids are "a matrix system for handling claims that involve substantially uniform levels of impairment."[121]  The Grids consist of three tables, each assessing disability in the context of "maximum sustained work capacity" limited to sedentary, light, or medium work.[122]  They present a short-hand method for determining disability based on "various combinations of factors relevant to a claimant's ability to find work," including a claimant's age, education, and work experience.[123]  For each combination of these factors, the Grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.[124]  The Grids can be used at step five of the ALJ's sequential evaluation when a claimant is able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.[125]  Where a claimant has significant non-exertional limitations, such as poor vision or pain, reliance on the grids is only appropriate where the grids yield a finding of

---

[121] *Tackett*, 180 F.3d. at 1101, citing 20 C.F.R. pt. 404, subpt. P, app 2.
[122] 20 C.F.R. pt. 404, subpt. P, app. 2, sec. 200.00.
[123] *Id*.
[124] *Tackett*, 180 F.3d. at 1101.
[125] *Id*.

"disabled."[126]  "But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately."[127]

As discussed above, Plaintiff must establish Title II disability as of the date last insured.  In this case, Plaintiff was 46 years old on the date last insured.[128] Under the Grids, a claimant is considered a "younger individual" if she is aged 18–49.[129]  In this age category, a finding of "disabled" is warranted for individuals 45–49 who: (1) are restricted to sedentary work; (2) are unskilled or have no transferable skills; (3) have no past relevant work or can no longer perform past relevant work; and (4) are illiterate.[130]  Even if Plaintiff is restricted to sedentary, unskilled work and can no longer perform her past relevant work, she is not illiterate and therefore, is not disabled under the Grids.[131]  The ALJ considered Plaintiff's non-exertional limitations in the RFC analysis.[132]  Moreover, the ALJ called a

---

[126] *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1115–16 (9th Cir. 2006) ("'[W]here application of the grids directs a finding of *disability,* that finding must be accepted by the Secretary ... whether the impairment is exertional or results from a combination of exertional and non-exertional limitations.' . . .  Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of *nondisability."*) (emphasis original) (internal citations omitted).

[127] *Id*.

[128] Docket 20 at 3; A.R. 663.

[129] 20 C.F.R. pt. 404, subpt. P, app. 2, sec. 201.00(h)(1).

[130] *Id.*

[131] At the hearing on November 18, 2020, Plaintiff testified that she had an associate's degree in criminal justice.  A.R. 705.  Plaintiff also prepared her complaint and brief as a self-represented litigant.  *See* Dockets 1, 20.

[132] A.R. 665–71.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 24 of 26
Case 3:25-cv-00065-ACP     Document 24     Filed 05/18/26     Page 24 of 26

vocational expert to testify whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.[133]

The ALJ did not err in finding Plaintiff not disabled under the Grids and the ALJ's determination at step five is supported by substantial evidence.

### IV. Mental Impairments

Plaintiff contends that she "has been unable to sustain employment due to her cognitive and other impairments[.]"[134] The Commissioner counters that Plaintiff alleged only knee problems in her disability report and Plaintiff has not shown any support in the record for her contention.[135]

Plaintiff does not appear to have alleged mental impairments during the administrative process with the SSA. As pointed out by the Commissioner, in Plaintiff's disability report from January 13, 2016, she reported that her knee joint deterioration and "arthritis in knees" limited her ability to work.[136] She also reported that she had not received treatment for mental conditions.[137] Moreover, at the November 18, 2020 hearing, the ALJ clarified that Plaintiff had not alleged mental health conditions and Plaintiff's attorney could not ask questions based on mental health limitations.[138] And, as noted by the Commissioner, Plaintiff has not

---

[133] A.R. 672, 726–32.
[134] Docket 20 at 4.
[135] Docket 21 at 3.
[136] A.R. 325.
[137] A.R. 328.
[138] A.R. 722 ("No medically determinable impairments have been alleged

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 25 of 26
Case 3:25-cv-00065-ACP    Document 24    Filed 05/18/26    Page 25 of 26

supported her allegation with proof in the medical record.[139]

In sum, the ALJ addressed all of Plaintiff's medically determinable impairments in the decision and was not required to discuss mental limitations in this case.

## ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 20 is DENIED and the Commissioner's final decision is AFFIRMED. All pending motions are denied as moot. The Court directs the Clerk of Court to enter judgment in favor of Defendant and close this case.

DATED this 18th day of May, 2026 at Anchorage, Alaska.

/s/ *Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge

---

concerning mental health conditions.").
[139] *See e.g.,* A.R. 469–598.

Case No. 3:25-cv-00065-ACP, *Phyllis W. v. Bisignano*
Decision and Order
Page 26 of 26